In re BRANIFF AIRWAYS, INC., et al., Debtors.

BRANIFF AIRWAYS, INC., Air Line Pilots Association, International; Braniff Airways, Inc., Retirement Plan for Pilots, Part A; Dale States, Jack Boisen, John Skiba and Richard Russell, constituting the Retirement Board of Braniff Airways, Inc. Retirement Plan for Pilots, Part A, Plaintiffs,

v.

BANKERS TRUST COMPANY AS TRUSTEE; and W.P. McDonald, Daniel P. Hulsey, Gerald S. Ross and N.G. Robson and V.A. Quattlebaum on their own behalf and on behalf of all Plan Beneficiaries and Pension Benefit Guaranty Corporation, Defendants.

Bankruptcy No. 482–00369.
Adv. No. 482–0337.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

Dec. 10, 1982.

See also, Bkrtcy., 24 B.R. 466.

David Bonderman, K. Peter Schmidt, Arnold & Porter, Washington, D.C., for plaintiffs.

Warren W. Shipman, III, Michael B. Hunter, Godfrey, Decker, McMackin, Shipman, McClane & Bourland, Fort Worth, Tex., Charles Plenge, Johnson, Bromberg & Leeds, James Hicks, Jr., Hal Gillespie, Hicks, Gillespie & James, P.C., Dallas, Tex., Robert Salvelson, Barbara Mehlsack, Cohen, Weiss & Simon, New York City, George A. Crowley, Kevin Kuenzli, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, Tex., Raymond B. McCoy, Dallas, Tex., Henry Rose, Mitchell Strickler, Lawrence F. Landgraff, Ken Cprek, Washington, D.C., for defendants.

Memorandum Opinion [1]

JOHN FLOWERS, Bankruptcy Judge.

In this adversary proceeding the Debtor is seeking a court ordered date for the

1. This opinion is substituted for the one ren-    dered December 8, 1982 to correct a misstate-

termination of its pension plan pursuant to 29 U.S.C. § 1348 of the Employee Retirement Income Security Act ("ERISA").

■ Under ERISA the Pension Benefit Guaranty Corporation ("PBGC") guarantees certain levels of payment to participants of pension plans. The guaranty extends through the first four statutory categories defined in 29 U.S.C. § 1344. The issue presented at the outset concerns the formula by which category three benefits are to be computed. That issue has relevance to the date of termination because the statutory provisions regarding termination procedure are dependent upon whether the plan is sufficient or insufficient. (See my memorandum opinion of November 9, 1982, 24 BR 466 (Bkrtcy), dealing with the termination date for the Retirement Plan for Management Employees of Braniff Airways, Incorporated.) A plan is sufficient when it has sufficient assets to pay the first four guaranteed statutory levels. All parties agree that if one formula is utilized the plan is sufficient; if another, it is insufficient. The PBGC contends the court should not concern itself with the formula upon which category three benefits are calculated until the PBGC has ruled on the matter administratively. However, in this case the question of sufficiency and the date of termination are inextricably linked thus requiring my decision on this point.

■ The undisputed facts are that there were different benefit levels being paid to eligible pilots in the three year period prior to termination: (1) Benefits calculated on a formula of $14,400 for those pilots who retired before August, 1976; (2) Benefits calculated on a formula of $16,400 for those who retired after January 1, 1978 which escalated automatically for this group to a 40% formula on May 1, 1979. Thus, depending upon his date of retirement an eligible pilot is paid amounts based upon either the 40% or the $14,400 formula. These automatic increases were the result of the pilots' collective bargaining agreement and were part of the plan within five years of any possible termination date which might be selected by the court.

ment of the facts. The result remains the

The statutory provisions in question provide:

(a) In the case of the termination of a single-employer defined benefit plan, the plan administrator shall allocate the assets of the plan (available to provide benefits) among the participants and beneficiaries of the plan in the following order:

. . . . .

(3) Third, in the case of benefits payable as an annuity—

(A) In the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the three-year period ending on the termination of the plan, to each such benefit, based on the provisions of the plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least,

. . . . .

For the purposes of subparagraph (A), the lowest benefit in pay status during a three year period shall be considered the benefit in pay status for such period. 29 U.S.C. § 1344.

The PBGC has issued Regulation § 2618 interpreting this statute. The pertinent part of this regulation provides:

(a) Definition. The benefits in priority category 3 are those annuity benefits that were in pay status before the beginning of the 3-year period ending on the date of plan termination, and those annuity benefits that could have been in pay status . . .

. . . . .

(b) Assigning benefits. The annuity benefit that is assigned to priority category 3 with respect to a participant is the lowest annuity that was paid or payable under the rules in Paragraphs (b)(2) through (b)(6) of this section.

. . . . .

(5) Automatic benefit increases. If plan provisions adopted and effective before the beginning of the 5-year period ending

same.

on the date of plan termination provided for automatic increases in the benefit formula for both active participants and those in pay status or for participants in pay status only, the lowest annuity benefit payable during the 5-year period ending on the date of plan termination determined under Paragraph (b)(3) of this section includes the automatic increases scheduled during the forth and fifth years preceding termination, subject to the following restrictions. Benefit increases for active participants in excess of the increases for retirees shall not be taken into account.

§ 2618(a), (b), (b)(5)

One sub-class of defendants represented by the defendant, McDonald, asserts the proper formula to determine category three benefits is the 40% formula because it was "in effect" during the relevant period. If the 40% formula is selected as the proper formula the plan becomes insufficient. Under the $14,400 formula the plan is sufficient. McDonald's argument is based upon paragraph (b)(5) of the regulation which contains the rule for automatic increases such as are involved here. He argues the statute is incomprehensible and focuses on the absence of the word "all" in the regulation when referring to increased benefits for participants in pay status. From this he contends the term "lowest annuity" must be the one resulting from the application of the 40% formula because it was an "automatic increase scheduled during" the relevant period payable to some of the participants in pay status. The omission of the word "all" is not crucial here because the regulation refers to increases for "those is pay status." Such language clearly implies *all* of those in pay status, not some or a portion as McDonald urges. The lead-in phrase to subdivision (b) expressly provides that category three is to be the *lowest* annuity under paragraphs (b)(2) through (b)(6). The statute also deals with the possibility that there may be more than one level of benefits paid to participants during the relevant period. The least benefit during the five year period is specified as the category three benefit. The relevant section concludes with the requirement that it be the lowest paid in the three year period. Those provisions apply to the situation presented here.[2]

Although not models of clarity, the intent of both the statute and the regulation is that the lowest annuity paid or payable is to be used. Of the various formulas in effect, the $14,400 formula is obviously the lowest and accordingly is the one to be used to determine category three benefits.

---

**2.** Although not an issue here, the regulation may be inconsistent with the statute in those cases where all participants in pay status receive an automatic increase within three years of termination. They would have been paid at different levels of benefits and under the regulation the highest level would seem to be the proper one.