## W.P. McDONALD

v.

BRANIFF AIRWAYS, INC. Air Line Pilots Assn. International; Braniff Airways Inc., Retirement Plan for Pilots, Part A: Dale States, Jack Boisen, John Skiba and Richard Russell, constituting the Retirement Board of Braniff Airways, Inc. Retirement Plan for Pilots, Part A.

BRANIFF AIRWAYS, INCORPORATED; Air Line Pilots Association, International; Braniff Airways Incorporated, Retirement Plan for Pilots, Part A; Dale States, Jack Boisen, John Skiba and Richard Russell, constituting the Retirement Board of Braniff Airways, Inc. Retirement Plan for Pilots, Part A, Plaintiffs,

v.

BANKERS TRUST COMPANY, as Trustee; and W.P. McDonald, Daniel P. Hulsey, Gerald S. Ross, N.G. Robson, and V.H. Quattlebaum on their own behalf and on behalf of all Plan Beneficiaries and Pension Benefit Guaranty Corporation, Defendants.

Misc. No. BK 4–225–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

June 28, 1983.

---

See also 24 B.R. 466.

Hicks, Gillespie & James by James L. Hicks, Jr., Dallas, Tex., for appellant.

David Bonderman, Arnold & Porter, Washington, D.C., Charles F. Plenge, Johnson, Bromberg, Leeds & Riggs, Dallas, Tex., for plaintiffs.

Kent Cprek, Pension Benefit Guaranty Corp., Washington, D.C., George A. Crowley, Kevin Kuenzli, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Warren W. Shipman, III, Michael Hunter, Godfrey, Decker, McMackin, Shipman, McClane & Bourland, Fort Worth, Tex., Barbara Mehlsack, Cohen, Weiss & Simon, New York City, Raymond B. McCoy, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

■ This is an appeal from an order of the United States Bankruptcy Court for the Northern District of Texas entered January 28, 1983. 27 B.R. 220. That order involved pension plans of Braniff Airways, Inc. ("Braniff") and as a "related proceeding," *see* 29 U.S.C. § 1303(f), must be reviewed *de novo* by this Court under § d(3) of the Local Rule of the Northern District of Texas concerning Bankruptcy Cases and Procedures. Having carefully considered the supporting briefs, oral arguments, and applicable law, the Court has concluded that the order of the Bankruptcy Court should be affirmed.

### I. *Facts*

The facts underlying this appeal are not in dispute. On November 3, 1976, Braniff and the Airline Pilots Association ("ALPA") signed a collective bargaining agreement effective as of December 1, 1976. The collective bargaining agreement provided that the "A" Fund minimum for all pilots retiring on or after August 1, 1976 would be increased to $16,400 at 20 years of service, plus an additional $250 per year for each additional year of service over 20, effective January 1, 1978 ("the $16,400 formula") and the "A" Fund minimum for all pilots retiring on or after August 1, 1976 would be recalculated to be equal to 40% of the best 12 consecutive months of the last 60 months of compensation prior to retirement (with an option to drop certain months), effective May 1, 1979 ("the 40%, formula").

As of either August 23 or 30, 1977 the terms of the "plan document" of the Braniff Airways, Incorporated Retirement Plan for Pilots provided an annual minimum benefit of $14,400 plus $250 for each year of service over 20 ("the $14,400 formula"). Braniff and ALPA signed an agreement on June 27, 1978 implemented the November 3, 1976 collective bargaining agreement in a

formal plan amendment which was approved by the Braniff Board of Directors on August 29, 1978.

## II. *Proper Method of Calculation*

The sole issue in this appeal involves the proper method of calculating priority category three benefits under Section 4044 of the Employee Retirement Income Security Act of 1974, ("ERISA") 29 U.S.C. § 1344.

Upon termination of a "defined benefit" plan, ERISA provides a mandatory statutory scheme of allocation of benefits into six categories. If the allocation shows that the assets of the plan are insufficient to satisfy all benefits through category 4A, Pension Benefit Guaranty Corporation steps in to supplement the plan's assets to provide guaranteed benefits under 29 U.S.C. § 1322.

29 U.S.C. § 1344(a)(3) provides a third priority in the allocation of pension plan assets for benefits payable as an annuity:

(A) in the case of the benefit of a participant or beneficiary which was in pay status as of the beginning of the 3-year period ending on the termination date of the plan, to each such benefit, based on the provisions of the plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least,

(B) in the case of a participant's or beneficiary's benefit (other than a benefit described in subparagraph (A)) which would have been in pay status as of the beginning of such 3-year period if the participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of annuity under the plan) as of the beginning of such period, to each such benefit based on the provisions of the plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

For purposes of subparagraph (A), the lowest benefit in pay status during a 3-year period shall be considered the benefit in pay status for such period.

PBGC issued a regulation to clarify these provisions. 29 C.F.R. § 2618.13(b) (1982) provides:

(b) Assigning benefits. The annuity benefit that is assigned to priority category 3 with respect to a participant is the lowest annuity that was paid or payable under the rules in paragraphs (b)(2) through (b)(6) of this section.

\* \* \* \* \* \*

(2) Plan provisions governing determination of benefit. In determining the amount of the priority category 3 annuity with respect to a participant, the plan administrator shall use the participant's age, service, actual or expected retirement age, and other relevant facts as of the following dates:

(i) Except as provided in the next sentence, for a participant or beneficiary whose benefit was in pay status before the beginning of the 3-year period ending on the date of plan termination, the priority category 3 benefit shall be determined according to plan provisions in effect on the date the benefit commenced. Benefit increases that became effective before the beginning of the 5-year period ending on the date of plan termination, including automatic benefit increases after that date to the extent provided in paragraph (b)(5) of this section, shall be included in determining the priority category 3 benefit. The form of annuity elected by a retiree is considered the normal form of annuity for that participant.

\* \* \* \* \* \*

(5) Automatic benefit increases. If plan provisions adopted and effective before the beginning of the 5-year period ending on the date of plan termination provided for automatic increases in the benefit formula for both active participants and those in pay status or for participants in pay status only, the lowest annuity benefit payable during the 5-year period ending on the date of plan termination determined under paragraph (b)(3) of this section includes

the automatic increases scheduled during the fourth and fifth years preceding termination, subject to the following restrictions. Benefit increases for active participants in excess of the increases for retirees shall not be taken into account.

Appellant McDonald asserts that the 40% formula should be used for determination of category three benefits because it is an "automatic benefit increase" as defined above. Appellees contend that the regulation regarding "automatic benefit increases" should be interpreted to mean increases for *all* retirees in a plan. The increases of the $16,400 formula and the 40% formula were only applicable to those persons retiring on or after August 1, 1976, and there were, in fact, persons in pay status as of August 1, 1976 under the Plan who were not entitled to those benefit increases.

The Court considers the proper construction of 29 C.F.R. § 2618.13(b)(5) to mean benefit increases for *all* retirees of the Plan. This conclusion is supported both by the common understanding of the words "those in pay status" to include the entire class of retirees, and by the interpretation offered by appellee PBGC, which is charged with the responsibility of interpreting and administering Title IV of ERISA, under the express Congressional authorization of 29 U.S.C. § 1302(b)(3), 1322(b)(4)(A) (1976 and Supp. IV 1980). *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *Connolly v. PBGC,* 581 F.2d 729, 730 (9th Cir.1978) *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *SEC v. Talley Industries,* 399 F.2d 396, 403 (2nd Cir.1968).

Thus, the $16,400 formula and 40% formula should not be applied in calculating category three benefits. Having made this determination, the Court need not determine whether the plan provisions at issue were both "adopted and effective" before the beginning of the five year period ending on the date of the plan termination.

The order of the United States Bankruptcy Court for the Northern District of Texas entered January 28, 1983 requiring calculation of category three benefits by the $14,400 formula is hereby AFFIRMED.